*E-FILED - 3/31/10*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| L.C. HARMON, | ) | No. C 07-1576 RMW (PR) |
| Petitioner, | ) ) | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY AS UNNECESSARY |
| vs. | ) ) ) | |
| BEN CURRY, Warden, | ) ) | |
| Respondent. | ) ) | |

    Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a 2005 decision by the California Board of Parole Hearings ("Board") in finding him unsuitable for parole. Petitioner argues that the Board's denial of parole in 2005 deprived him of his right to due process because it was not supported by at least some evidence that he would be a danger to the community if released. Petitioner also claims that the Board's decision denying him parole violated his plea agreement. Respondent filed an answer denying the petition, along with a supporting memorandum and exhibits. Although given an opportunity, petitioner has not filed a traverse.

///

# BACKGROUND[1]

Just before midnight on October 8, 1983, petitioner and his criminal partner, George Butler, were playing dice at a liquor store with the victim, Curtis McKinstry, the victim's son, Woodrow, and some other people. (Tr. at 11.) After the game, the victim and his son, Woodrow, began walking away. (Id. at 11-12.) Petitioner asked one of them for a match. (Id. at 12.) Woodrow refused and continued to walk. (Id.) Either Butler or petitioner said, "hey man," and when Woodrow turned around, he saw Butler take out and cock a .45 semiautomatic handgun. (Id.) Woodrow believed he was going to be shot so when Butler demanded money, Woodrow complied and then started to run away. (Id.) As Woodrow was running, he heard three gunshots and when he looked back, he saw his father, the victim, on the ground and Butler and petitioner going through the victim's pockets. (Id.) The victim was shot through the heart, left lung, and spinal cord. (Id.) Petitioner was charged with first degree murder, principal armed with a handgun, and robbery. (Id. at 13.) Petitioner subsequently pleaded guilty to second degree murder and the remaining counts were dismissed. (Id.) As a condition of his plea, petitioner agreed to testify against Butler at Butler's trial. Petitioner was sentenced to fifteen years to life in state prison. (Id. at 1.) His minimum eligible parole date was February 9, 1993. (Id.)

On April 8, 2005, at petitioner's parole suitability hearing, the Board found him unsuitable for parole. Petitioner filed unsuccessful habeas petitions in California Superior Court, California Court of Appeal, and California Supreme Court. Petitioner filed the instant action on March 20, 2007.

## DISCUSSION

**A.    Standard of Review**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim, "(1) resulted in a decision that was contrary to, or involved an

---

[1] The relevant facts are taken from the Transcript of the April 8, 2005 Subsequent Parole Consideration Hearing. (Resp. Ex. 3, Ex. C, hereinafter "Tr.".)

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, Williams (Terry) v. Taylor, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of Section 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams (Terry), 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of Section 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. See id. at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El, 537 U.S. at 340. A petitioner must present clear and convincing evidence to overcome Section 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El, 537 U.S. at 340.

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the federal habeas court looks to the last reasoned opinion in conducting its analysis under Section 2254(d). See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991). The

1  standard of review under AEDPA is somewhat different where the state court gives no reasoned
2  explanation of its decision on a petitioner's federal claim and there is no reasoned lower court
3  decision on the claim. In such a case, a review of the record is the only means of deciding
4  whether the state court's decision was objectively reasonable. See Plascencia v. Alameida, 467
5  F.3d 1190, 1197-98 (9th Cir. 2006). When confronted with such a decision, a federal court
6  should conduct "an independent review of the record" to determine whether the state court's
7  decision was an objectively unreasonable application of clearly established federal law. Id. at
8  1198. Here, the opinions of the California Court of Appeal and the California Supreme Court
9  are summary. The superior court opinion is the last reasoned opinion to address petitioner's
10 claims, and it is consequently the operative state court decision for purposes of Section 2254(d).

**B.     Issues Presented**

As grounds for federal habeas relief, petitioner asserts that: (1) the Board's decision violated due process; and (2) the Board's decision violated petitioner's plea agreement.

    1.     Respondent's Issues

In order to preserve the issues for appeal, respondent argues that California prisoners have no liberty interest in parole, and that if they do, the only due process protections available are a right to be heard and a right to be informed of the basis for the denial – that is, respondent contends there is no due process right to have the result supported by sufficient evidence. Because these contentions are contrary to Ninth Circuit law, they are without merit. See Irons v. Carey, 479 F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary hearings as outlined in Superintendent v. Hill, 472 U.S. 445-455 (1985)); Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128-29 (9th Cir. 2006) ("some evidence" standard identified in Hill is clearly established federal law in the parole context for purposes of § 2254(d)); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002) ("California's parole scheme gives rise to a cognizable liberty interest in release on parole").

    2.     Some Evidence

A parole board's decision satisfies the requirements of due process if "some evidence"

supports the decision. Sass, 461 F.3d at 1128-29. "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the parole board. Id. at 1128 (quoting Hill, 472 U.S. at 455-56). The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary.'" Id. at 1129 (quoting Hill, 472 U.S. at 457).

It is now established under California law that the task of the Board is to determine whether the prisoner would be a danger to society if he or she were paroled. See In re Lawrence, 44 Cal. 4th 1181 (2008). The constitutional "some evidence" requirement therefore is that there be some evidence that the prisoner would be such a danger, not that there be some evidence of one or more of the factors that the regulations list as factors to be considered in deciding whether to grant parole. Id. at 1205-06.

In several cases the Ninth Circuit has discussed whether the "some evidence" standard can be satisfied by evidence of the nature of the commitment offense and prior offenses. In Biggs v. Terhune, 334 F.3d 910, 915-17 (9th Cir. 2003), the court explained that the some evidence standard may be considered in light of the Board's decisions over time. The court reasoned that "[t]he Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Id. Although the Biggs court upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, the court cautioned that "[o]ver time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense would raise serious questions involving his liberty interest." Id. at 916.

The Sass court criticized the decision in Biggs: "Under AEDPA it is not our function to speculate about how future parole hearings could proceed." Sass, 461 F.3d at 1129. Sass

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability as Unnecessary
P:\PRO-SE\SJ.Rmw\HC.07\Harmon576den.wpd      5

1  determined that it is not a due process violation per se if the Board determines parole suitability
2  based solely on the unchanging factors of the commitment offense and prior offenses.  Id.
3  (prisoner's commitment offenses in combination with prior offenses amounted to some evidence
4  to support the Board's denial of parole).  However, Sass does not dispute the argument in Biggs
5  that, over time, a commitment offense may be less probative of a prisoner's current threat to the
6  public safety.

7        The Ninth Circuit explained that all of the cases in which it previously held that denying
8  parole based solely on the commitment offense comported with due process were ones in which
9  the prisoner had not yet served the minimum years required by the sentence.  Id.  Also, noting
10 that the parole board in Sass and Irons appeared to give little or no weight to evidence of the
11 prisoner's rehabilitation, the Ninth Circuit stressed its hope that "the Board will come to
12 recognize that in some cases, indefinite detention based solely on an inmate's commitment
13 offense, regardless of the extent of his rehabilitation, will at some point violate due process,
14 given the liberty interest in parole that flows from relevant California statutes."  Id. (citing
15 Biggs, 334 F.3d at 917).  Even so, the Ninth Circuit has not set a standard as to when a complete
16 reliance on unchanging circumstances would amount to a due process violation.

17       Here, the Board denied parole based on the circumstances of the murder, petitioner's
18 prior convictions, petitioner's unstable social history, insufficient programming, and a 2003
19 serious disciplinary report for failure to submit to a urine sample.  (Tr. at 50-51, 53.)  The Board
20 recognized that petitioner's 2000 psychiatric report was favorable, and noted that petitioner had
21 adequate parole plans and familial support.  (Id. at 52.)  Further, the Board mentioned that the
22 District Attorney did not indicate an opposition to parole suitability.  (Id.)  Taking the entire
23 record into consideration, however, the Board observed that petitioner's participation in any
24 substance abuse programming ceased in 1999, and in light of some evidence of prior cocaine
25 abuse by petitioner, combined with petitioner's 2003 serious disciplinary report, the Board
26 concluded that any positive factors were not outweighed by factors of unsuitability.  (Id. at 52-
27 54.)

28       The California Superior Court concluded that there was "some evidence" to support the

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability as Unnecessary
P:\PRO-SE\SJ.Rmw\HC.07\Harmon576den.wpd      6

1   Board's finding that petitioner was unsuitable for parole. (Resp. Ex. 2, p. 1.) The court found
2   that there was no evidence to support the Board's finding that the crime was "exceptionally
3   callous" or that the motive was very trivial. (Id. at 2.) However, the court noted that the Board's
4   reliance on petitioner's disciplinary violation for refusing to give a urine sample, petitioner's
5   unstable social history, and petitioner's insufficient self-help programming amounted to "some
6   evidence" supporting the Board's decision. (Id.)

7         The court's decision was not unreasonable. Although Biggs provided that "a continued
8   reliance in the future on an unchanging factor . . . runs contrary to the rehabilitative goals by the
9   prison system and could result in a due process violation," the Board did not base its decision
10  solely on petitioner's commitment offense. Biggs, 334 F.3d at 916-17. The nature of
11  petitioner's commitment offense and his criminal history factored into the Board's
12  determination, but the Board was also concerned that petitioner had not adequately participated
13  in self-help programs and petitioner received a serious disciplinary report as recently as 2003.
14  These factors were properly considered by the Board. In light of the fact that petitioner had a
15  problem with cocaine during the period when he committed the underlying crime (Tr. at 22) and
16  did not submit a urine sample when asked, which was the basis of the 2003 disciplinary report,
17  the Board's concern that petitioner stopped attending any substance abuse programs and had not
18  taken adequate steps to address this issue was reasonable. Thus, some evidence supports the
19  Board's finding that petitioner continues to pose an unreasonable risk of danger to society if
20  released on parole. See Lawrence, 44 Cal.4th at 1191, 1220, n. 19. The state court's rejection of
21  petitioner's due process claim was neither contrary to nor an unreasonable application of the
22  "some evidence" requirement of due process. Consequently, petitioner is not entitled to federal
23  habeas relief.

24        3.      Plea Agreement

25        Petitioner contends that the Board's decision amounted to a breach of his plea agreement,
26  in violation of his right to due process. He summarily states that the "term's [sic] of plea bargain
27  has not been met" and the "Board has not fix [sic] term in manner prescribed by law." (Am.
28  Petition at 13.)

1  "Plea agreements are contractual in nature and are measured by contract law standards." Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003) (quoting United States v. De la Fuente, 8 F.3d 1333, 1337 (9th Cir. 1993)).  Although a criminal defendant has a due process right to enforce the terms of a plea agreement, see Santobello v. New York, 404 U.S. 257, 261-62 (1971), there is no evidence that petitioner's subjective expectations about how parole would be decided were part of the plea agreement.  The plea colloquy did not make any promises regarding when or how parole consideration would occur, and petitioner specifically understood at the colloquy that his possible sentence was a life sentence. (Am. Petition, Ex. B, p. 24, 30.)  Unlike the appellant in Brown, petitioner does not identify any actual promise made to him or any particular term of the agreement that has been breached.   Further, the Brown appellant was able to point to explicit statements in the plea colloquy that led her to believe her to believe she would get out in half the minimum years if she behaved herself in prison.  See Brown, 337 F.3d at 1160 ("Brown heard and acknowledged the prosecutor's promises, and in the process of waiving her right to trial she accepted them as part of her bargain.  The intent of the parties becomes clear upon an examination of the language of the plea agreement and the conduct of the parties during the plea colloquy.")  Petitioner submits no similar reliable evidence in support of his claim.

In sum, petitioner provides no evidence that there was any promise that he would be released at any particular time absent further criminal activity.  The possibility of parole does not mean a guarantee of parole; under state law, the inmate must be found suitable before his term and release date are set.  Petitioner has received the parole considerations to which he was entitled under that agreement and sentence.  Accordingly, the state court's rejection of the plea bargain claim was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.  Petitioner's claim that his plea agreement was breached in violation of his right to due process fails.

## CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners have recently been amended to require a district court that denies a habeas petition to grant or deny a certificate of

appealability ("COA") in its ruling. See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009). However, the Ninth Circuit has made clear that a state prisoner challenging the Board of Prison Terms' administrative decision to deny a request for parole need not obtain a certificate of appealability. See Rosas v Nielsen, 428 F.3d 1229, 1232 (9th Cir 2005). Accordingly, any request for a COA is DENIED as unnecessary.

## CONCLUSION

The court concludes that petitioner has failed to show any violation of his federal constitutional rights in the underlying parole proceedings. Accordingly, the petition for a writ of habeas corpus is DENIED. In addition, a COA is DENIED as unnecessary. The clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: __3/31/10__

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge